2026 IL App (2d) 260123-U
No. 2-26-0123
Order filed August 10, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

*In re* M.K., C.K., E.K., and W.K., Minors

(The People of the State of Illinois, Petitioner-Appellee, v. Mary C., Respondent-Appellant).

Appeal from the Circuit Court of Lake County.
Honorable Reginald C. Mathews, Judge, Presiding.
Nos. 20-JA-159, 20-JA-160, 21-JA-145, 22-JA-103

JUSTICE MULLEN delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in overruling respondent's objections based upon Rule 213 to testimony of a caseworker and photographs of the respondent minors during the best interest phase of the proceedings.

¶ 2    In this case, respondent, Mary C., appeals from orders of the circuit court of Lake County finding her unfit to parent her children and terminating her parental rights. Respondent does not challenge the merits of the court's unfitness or best interests findings on appeal. Rather, respondent only challenges certain discovery rulings related to the best interest phase of the proceedings. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Respondent is the biological mother of M.K., born September 13, 2017, C.K., born July 15, 2019, E.K., born May 29, 2021, and W.K., born June 3, 2022. The parental rights of the father of the children, Andrew K., were also terminated but are not at issue in this appeal.[1]

¶ 5                              A. The Neglect Petitions

¶ 6      On July 24, 2020, the State filed a petition for adjudication of wardship with respect to M.K. and C.K. The petitions alleged that that the minors were neglected in that their environment is injurious to their welfare because they were not receiving the proper or necessary support, education as required by law, medical or other remedial care recognized under state law as necessary for their well-being, or other care necessary for his or her well-being, in that respondent has a history of substance abuse and there was a history of domestic violence between respondent and Andrew K. (see 705 ILCS 405/2-3-(1)(a) (West 2020)). The petition also alleged that the minors were neglected, in that Andrew K. was intoxicated while caring for the minors, resulting in C.K. hitting his head, causing a cut above his eye (see 705 ILCS 405/2-3(1)(b) (West 2020)). On October 13, 2020, M.K. and C.K. were adjudicated neglected.

¶ 7      While the matter was pending and the children remained in care, respondent gave birth to E.K. On June 30, 2021, the State filed a petition for adjudication of wardship with respect to E.K, as well and on December 15, 2021, E.K. was adjudicated neglected.

¶ 8      While these matters remained pending, respondent also gave birth to W.K. On June 6, 2022, the State filed a petition for adjudication of wardship with respect to W.K. The petition alleged that W.K. was neglected in that her environment is injurious to her welfare because respondent

---

[1]Johnny T. was named as the potential biological father of W.K. He was deceased at the time of the termination hearing, and his parental rights are not at issue in this appeal.

consumed cannabis and/or opiates while pregnant with W.K., has a history of substance abuse and domestic violence, and the siblings of W.K. were in the guardianship of the Illinois Department of Children and Family Services (the Department) and her parents had not completed services as directed (see 705 ILCS 405/2- 3(1)(b) (West 2022)). On February 1, 2024, W.K. was adjudicated neglected.

¶ 9                                    B. The Termination Proceedings

¶ 10     Because respondent does not challenge the merits of the court's unfitness or best interests findings on appeal, we will abbreviate the facts and recount only those necessary to address respondent's challenges to the contested discovery rulings in the best interest phase of the proceedings.

¶ 11     A hearing on the State's amended petition for termination of parental rights began on December 16, 2025. The petitions alleged that respondent is an unfit person to have a child in that she: failed to maintain a reasonable degree of interest, concern or responsibility as to the children's welfare (750 ILCS 50/1(D)(b) (West 2024)), failed to make reasonable efforts to correct the conditions which were the basis for the removal of the children during specified 9-month periods following the adjudications of neglect (750 ILCS 50/1(D)(m)(i) (West 2024)), and failed to make reasonable progress toward the return of the children during specified 9-month periods following the adjudications of neglect (750 ILCS 50/1(D)(m)(ii) (West 2024)). On that first hearing date, counsel for respondent was present but respondent was not. Diana Steiskal, respondent's caseworker, stated that she had received text messages from respondent that morning. Respondent texted Steiskal that "she ha[d] been reaching out to her lawyer for days and hours and she [was] currently in Iowa and she wanted to be present for the hearing and not attend by Zoom." Steiskal informed respondent that the hearing was set to begin that day, and that respondent should appear

via Zoom if she was in Iowa. Respondent did not reply to that message. Prior to the December 16 messages, respondent had texted Steiskal on December 8, to let Steiskal know that she was in Illinois to prepare for the hearing.

¶ 12    Counsel for respondent told the court that respondent had texted him a few days prior to the hearing to let him know that she was driving to Iowa. Respondent told her attorney that she planned on entering a treatment center in Iowa. The day prior to trial, respondent texted her attorney that she was in a rehabilitation center and would not be able to attend the hearing. Counsel for respondent replied, asking for the name of the rehabilitation center, but respondent did not respond.

¶ 13    Counsel for respondent told the trial court, "For argument's sake I'm going to take her for her word and assume she is in a rehab center, and I'm going to respectfully request if Your Honor would enter and continue this matter. My client has a right to be in person and/or on Zoom." The State and the guardian *ad litem* (GAL) objected to the continuance, as respondent's case had been pending for five years and the initial petitions for termination of parental rights had been filed over 10 months prior to the hearing date. The trial court denied respondent counsel's motion to continue. In issuing its ruling, the trial court requested that Steiskal send a text message to respondent to inform her that the hearing was beginning and that respondent was "invited" to participate in the proceedings. It indicated that if respondent did appear, the proceedings would be paused so that respondent could join. However, it noted that it would not continue the matter for another date because it had "no verification [of] where she's at. And [respondent] ha[d] done nothing before this Court for [it] to give her the benefit of the doubt that she's being truthful." The matter then proceeded to hearing, with the State first calling Steiskal, respondent's caseworker, to testify. Steiskal testified that M.K. and C.K. were adjudicated neglected because they were "left in a

- 4 -

dangerous environment without supervision and left with" their father despite a court order prohibiting the children from being left alone in his care. The minors' father had a history of excessive alcohol consumption. Additionally, there was a history of domestic violence between respondent and the minors' father. Steiskal testified that M.K. and C.K. were made wards of the court and respondent was ordered to complete services.

¶ 14   E.K. and W. K. were born while M.K. and C.K. were in the custody of DCFS and they were also brought into care. Respondent had not completed her court-ordered services. Specifically, respondent did not complete the parenting program or classes required for reunification. She completed a substance abuse assessment but did not cooperate with the recommended treatment. Respondent also did not comply with random drug tests. She did not complete mental health services. Further, respondent moved to Iowa without permission and had another child in Iowa. Respondent then refused to work with Steiskal, stating that she only wanted to work with her Iowa caseworker. Respondent also failed to sign consent forms, so Steiskal could not verify what services respondent was completing in Iowa. Steiskal recalled an incident in March 2024 where several staff members had to intervene during respondent's visit with the minors. Steiskal stated that respondent was "neurotic" and was not cooperating with staff. Respondent had prior visits canceled due to testing positive for meth. Steiskal testified that respondent frequently failed to appear for drug tests or tested positive for marijuana, meth, or other drugs.

¶ 15   Following Steiskal's testimony, the State rested and concluded the unfitness portion of the proceedings. At this time, counsel for respondent alerted the trial court that respondent had texted him her location. She stated that she was at "Cedar River Haven" in Iowa, a rehabilitation facility. Counsel for respondent requested that the trial court wait to issue a decision until he could order a transcript and consult with respondent. Steiskal noted that her phone indicated that respondent read

her last text message but did not reply. Over the objection of the State and the GAL, the trial court granted counsel's request. The court noted that if respondent appeared at the next court date and wanted to testify, it would reopen proofs and allow her to do so. However, "if she fail[ed] to show on the next court date," the trial court stated that it was "going to proceed."

¶ 16    The matter reconvened before the trial court on January 27, 2026. Respondent appeared in person. Counsel for respondent requested that the trial court enter and continue the matter because respondent had created for him an "ethical dilemma." He explained that respondent had presented with four witnesses whom she wanted to testify on her behalf. He did not know the character of the testimony each witness would provide. He noted that he was "unfortunately *** placed in a horrible situation which would be remedied by [ ] disclosing in a [Rule] 213 manner what these witnesses [would] testify to and even if they should be testifying."

¶ 17    Respondent also addressed the court and explained that at the time of the December 16, 2025, hearing date, she was in Iowa attempting to get accepted into a rehabilitation facility. She was unable to get into the rehabilitation facility she had spoken of via text message. She told the trial court that she did not join the hearing in person or via Zoom because she "was actively seeking treatment" and "hoping to get in somewhere before that happened." She further explained that she had not been in contact with her attorney from December 16 until the present date because she was in Iowa with her boyfriend and was "taking care of some legal matters."

¶ 18    The trial court asked respondent the identity of the four people whom she wished to testify. She stated that there were more people, but that she "didn't want to overwhelm." Counsel for respondent reiterated his need to vet the individuals, as he knew that one of respondent's intended witnesses would be detrimental to respondent's case.

¶ 19    Over the objection of the State and the GAL, the trial court continued the hearing for a final date to rule on fitness. It noted that it was "granting this continuance solely and only because *** [it is] looking out for the best interests of the children, which is also looking out for the record," and to allow respondent's attorney "an opportunity to vet these witnesses as potential witnesses…." While the court emphasized that these were "the only four witnesses [it would consider] as potential witnesses," it noted that if, in counsel's research, he discovered new witnesses, it wanted him "to tender those right away to the State and the [GAL]." After the GAL asked that counsel provide the spelling of the name of each witness, counsel for respondent stated, "I believe I'll give a 213 disclosure after I vet each one." The trial court acknowledged this, stating, "Yes. I will order that. *** I would direct [counsel] to put those names in writing." Counsel then told the court that he would "follow Rule 213 disclosing their name [*sic*], address [*sic*], phone number [*sic*], and a description of what [he] anticipate[d] they [would] testify to."

¶ 20    The matter was continued for hearing on February 17, 2026. Respondent appeared via Zoom. At the outset, counsel for respondent reported that he determined that none of the potential witnesses should testify on respondent's behalf, and that respondent would not testify during phase one of the termination proceedings. Thus, he rested respondent's case for the unfitness phase of the proceedings.

¶ 21    The trial court found that the State met its burden of proving respondent unfit in phase one of the termination proceedings and announced its intent to move on to the best interests phase of the hearing. Counsel for respondent indicated that respondent had two witnesses that could testify on her behalf in the second phase of the proceedings and asked for leave to disclose the witnesses. Upon learning that the witnesses were not available to testify that day, the trial court denied counsel's request.

¶ 22   The State then called Steiskal to testify. Counsel for respondent requested that the State produce a Rule 213 disclosure for the witnesses that the State intended to call. When the State indicated that it only intended to call Steiskal, counsel opined that Rule 213 required the State to produce her name, telephone number, and the content of her testimony. The State responded that counsel knew Steiskal's name, her telephone number was in the documents produced, and counsel was in possession of all Steiskal's records that provided the basis for her testimony, including her best interests report. The trial court ruled that counsel waived his argument, as Steiskal testified during the first phase of the proceedings and he did not object then.

¶ 23   Steiskal then testified on behalf of the State. She stated that M.K. and C.K. were placed together in a foster home and that E.K. and W.K. were placed together in a separate foster home. M.K. was doing exceptionally well in her foster placement. Her family had worked with the school to support M.K.'s initially severe educational needs and she no longer needed an IEP or occupational therapy. She was involved in soccer and referred to her foster parents as "Mom" and "Dad." C.K. was also doing well in the foster home. He formed a strong bond to his foster siblings and also referred to his foster parents as "Mom" and "Dad." Steiskal opined that it was in the children's best interest that M.K. and C.K. remained together. E.K. was bonded to his foster family and had lived with them most of his life. His foster parents noticed some behavioral concerns and were taking E.K. to psychiatric appointments. He formed an attachment to his foster siblings and called his foster parents "Mom" and "Dad." W.K. had been living with E.K. in her foster home since birth. She also referred to her foster parents as "Mom" and "Dad." The children's foster families were willing to provide permanency. Steiskal opined that it would be in the best interest of the children if respondent's rights were terminated.

¶ 24    Following the State's examination of Steiskal, the trial court asked a few clarification questions. To assist in answering the court's questions, the State offered an exhibit which included Steiskal's best interest report. That exhibit contained photos of M.K, C.K., E.K., and W.K. together with their foster siblings. Counsel for respondent objected to the admission of the photographs into evidence, as he had not seen the pictures prior to the hearing. The State argued that the photographs were shown earlier and that there were pictures attached to reports in counsel's possession. Finding that respondent was not prejudiced by the introduction of the photographs, the trial court admitted the exhibit into evidence. In finding that the admission of the photographs into evidence did not prejudice respondent, the trial court noted that respondent was "invited" to appear at the hearing in-person but chose to appear via Zoom. The trial court granted respondent's counsel a recess in which he could discuss the contents of the exhibit with respondent.

¶ 25    Following Steiskal's testimony, the State rested. Counsel for respondent did not call any witnesses for phase two of the proceedings. Following argument by the parties, the trial court found that the State met its burden as to best interests and terminated the parental rights of respondent. A written order formalizing the trial court's findings was entered on March 4, 2026. This appeal followed.

¶ 26                                    II. ANALYSIS

¶ 27    On appeal, respondent challenges discovery orders by the trial court made during the termination proceedings. Specifically, she argues that the trial court erred in denying her request for Rule 213 disclosures during the best interest phase of the proceedings and in admitting photographs disclosed for the first time during the proceedings.

¶ 28    Respondent first argues that the trial court erred in denying counsel's request for a Rule 213 disclosure of Steiskal's information prior to her testimony in the best interest proceedings. In

support of this argument, respondent contends that she was required to produce information regarding her four potential witnesses subject to Rule 213, and "[n]o reasonable person would place a burden on one party, *** then not place the same burden on another party, specifically the State." Respondent further contends that the two phases of a termination of parental rights proceeding have "different testimony and have a different standard of proof," and thus she did not waive this objection when she failed to object to Steiskal's testimony during the unfitness portion of the proceedings.

¶ 29 The Adoption Act provides: "The provisions of the Civil Practice Law and all existing and future amendments of that Law and the Supreme Court Rules now or hereafter adopted in relation to that Law shall apply to all adoption proceedings except as otherwise specifically provided in this Act." 750 ILCS 50/20 (West 2024). See also 19th Judicial Cir. Ct. R. 8-108(A) (October 24, 2016) ("As permitted by the Court, Discovery is allowed pursuant to the Illinois Code of Civil Procedure and Supreme Court Rules."). Illinois Supreme Court Rule 213 sets forth the requirements for disclosing witnesses between parties in a civil proceeding. Ill. S. Ct. R. 213 (eff. Jan. 1, 2018). The parties have not directed us to any discovery orders entered by the trial court nor to any termination cases which have applied Rule 213, but we are aware of *In re Davon H.*, 2015 IL App (1st) 150926, which applied the rule to an abuse/neglect matter.

¶ 30 Supreme Court Rule 213 requires a party—upon request—to identify their witnesses at trial and provide information about the witness's anticipated testimony. Ill. S. Ct. R. 213(f) (eff. Jan. 1, 2018); *Heriford v. Moore*, 377 Ill. App. 3d 849, 852 (2007) ("Subparagraph (f) of that rule provides a clear condition precedent to the provision of discovery, unlike Rule 222. The duty to disclose arises '[u]pon written interrogatory.' ") The amount of information required concerning each witness varies by the type of witness, of which there are three: lay witnesses, independent

expert witnesses, and controlled expert witnesses. See Ill. S. Ct. R. 213(f)(1), (2), (3) (eff. Jan. 1, 2018); *id*. at Committee Comments (adopted Mar. 28, 2002) ("The paragraph divides witnesses into three categories, with separate disclosure requirements for each category.")

¶ 31    Turning to the application and construction of the rule, the rule itself states: "This rule is to be liberally construed to do substantial justice between or among the parties." See Ill. S. Ct R. 213(k) (eff. Jan. 1, 2018). The seminal case construing Rule 213 is *Sullivan v. Edward Hospital*, 209 Ill. 2d 100 (2004). There, the supreme court observed: "The purpose behind Rule 213 is to avoid surprise and to discourage tactical gamesmanship." *Sullivan*, 209 Ill. 2d at 111. The decision whether to impose sanctions lies within the sound discretion of the trial court, and that decision will not be reversed absent an abuse of discretion. *Sullivan*, 209 Ill. 2d at 110.

¶ 32    It is difficult to discern respondent's precise argument, but the import of it seems to hinge on (1) the determination that whatever disclosures were made regarding the unfitness phase of the hearing did not apply to the best interest phase, and (2) that the trial court burdened her with a discovery obligation not shared by the State. The first argument is forfeited. Respondent cites nothing to support it.

¶ 33    Nor was there any error in admitting the testimony of Steiskal during the best interest phase of the proceedings. First, respondent established no violation of either a trial court discovery order or Rule 213. Assuming Rule 213 was invoked, respondent was provided with what she contends she was owed: the witness's contact information and the subjects of her testimony. She also received the witness's records and reports. Rule 213(e) allows a party to provide the required information by tendering documents. Ill. S. Ct R. 213(e), eff. Jan. 1, 2018.

¶ 34    We do not find that the trial court placed a burden on her that it did not place upon the State. This misstates the events that occurred during the proceedings and attempts to use the rule

as a sword, not a shield (see Ill. S. Ct R. 213(e), Committee Comments (adopted Mar. 28, 2002) ("This rule is intended to be a shield to prevent unfair surprise but not a sword to prevent the admission of relevant evidence on the basis of technicalities."). Here, after the chaotic events surrounding respondent's failure to appear in person or on Zoom for the beginning of the termination proceedings, the trial court continued the matter and allowed counsel time to "vet" newly disclosed witnesses. Of his own accord, counsel promised to make Rule 213 disclosures, which the court formalized with an order. As both the State and trial court noted, respondent had in his possession Steiskal's name, address and even telephone number, as well as her reports. Importantly, he had the information that the trial court ordered that he provide to the State to present witnesses. Thus, we find that there was no abuse of discretion by the trial court.

¶ 35 Next, respondent contends that the trial court erred in admitting the photographs of the children into evidence. Here, respondent contends that the pictures were not disclosed prior to the hearing. The State contended that the pictures had been shown prior to trial. Regardless, it noted that there were similar pictures attached to the best interest report from which Steiskal would testify. At the request of respondent's counsel, the trial court permitted respondent and her attorney time to discuss the contents of the photographs. There could be no surprise concerning the photos. See *Sullivan*, 209 Ill. 2d at 111.  Based on these events, we do not find the decision of the trial court to admit the photographs to be arbitrary, fanciful, or unreasonable. "Excluding evidence not disclosed pursuant to discovery should be resorted to only when a recess or continuance would be ineffective." *In re K.I.*, 2016 IL App (3d) 160010, ¶ 56. The trial court acted well within its discretion.

¶ 36 Regardless, even if there was error in the trial court's discovery rulings, any such error was harmless. See *In re Adoption of C.D.*, 313 Ill. App. 3d 301, 315 (2000) (applying harmless error

analysis to dismiss claim that the trial court improperly admitted a previously undisclosed report into evidence). Steiskal's testimony in the best interest phase was largely based upon the reports already admitted into evidence during the unfitness phase. Those reports also contained photographs similar to those produced through Steiskal's testimony. Additionally, the evidence overwhelmingly supports the conclusion that respondent was unfit and it was in the best interest of the children to terminate her parental rights. While this case was pending, respondent failed to complete any of the services required of her for reunification. She moved to Iowa and refused to maintain contact with her Illinois caseworker. Respondent also frequently failed to appear for drug tests or she tested positive for marijuana, meth, or other drugs. Moreover, she did not consistently visit with the minors or complete parenting education. The minor children had formed strong attachments with their foster families, and their foster families were willing to provide permanence. Accordingly, the evidence related to unfitness and the best interests of the children was overwhelming such that any error was harmless and further proceedings are unnecessary.

¶ 37                                    III. CONCLUSION

¶ 38    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 39    Affirmed.